**KENNETH A. PAUL**
ATTORNEY AT LAW

TRINITY BUILDING
111 BROADWAY - SUITE 701
NEW YORK, N.Y. 10006
TELEPHONE: (212) 587-8000
FAX: (212) 374-1506

kpaul@kennethpaulesq.com

January 20, 2016

Via ECF and Regular Mail
Honorable Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Ryan Quashie
                14 Cr. 376 (BMC)

Dear Judge Cogan:

      I represent Mr. Ryan Quashie in the above-referenced matter. Please accept this letter as a sentencing memorandum on behalf of Mr. Quashie. We have received and reviewed the initial Presentence Investigation Report ("PSR") prepared by probation on October 25, 2016. On November 23, 2016, pursuant to Rule 32(f), our objections to the PSR were filed and mailed to the probation officer.

      On July 18, 2016, Mr. Quashie was found guilty by a jury of Count One and Count Three of a four-count Superseding Information. Count One charged that between July 10, 2009, and January 25, 2010, Ryan Quashie, together with others, conspired to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by robbery; specifically, the robbery of John Doe #1, in Queens, New York, and the robbery of John Doe #2, in Queens, New York, in violation of 18 U.S.C. §1951(a).

      Count Three charged that on January 25, 2010, Ryan Quashie, together with others, attempted to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by robbery; specifically, the attempted robbery of John Doe #2, in Queens, New York, in violation of 18 U.S.C. §1951.

Honorable Brian M. Cogan
January 20, 2017
Page Two

      Mr. Quashie was found not guilty of Count Two. Count Two charged that on July 10, 2009, Ryan Quashie, together with others, did knowingly and intentionally obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by robbery; specifically the robbery of John Doe #1, in Queens, New York.

      Mr. Quashie was also found not guilty of Count Four. Count Four charged that Ryan Quashie, in or about and between July 10, 2009 and January 25, 2010, within the Eastern District of New York, together with others, did use, and carried a firearm during and in relation to the crimes charged in Counts One, Two and Three, specifically robbery conspiracy occurring in or about and between July 10, 2009 and January 25, 2010, (Count One), the robbery occurring on July 10, 2009, (Count Two), and the attempted robbery occurring on January 25, 2010, (Count Three), and in furtherance of those crimes.

      Though the Government attempted to review the evidence as presented at trial with regard to the acquittal of the Purves Street robbery, (ECF Doc. #191), I do not believe it necessary to re-litigate the facts alleged to support these charges since Your Honor presided over two separate trials and is quite familiar with the facts, evidence, and credibility of witnesses as presented at those trials. Suffice it to say, that in evaluating the credibility and inconsistent identification testimony of the victim, Fabio Salazar; the credibility of both of the two cooperating witnesses, Harry Pacheco and Diego Ercoli; the obvious DNA evidence found on Mr. Quashie's own phone; and the testimony of Stephanie Wang; it is not difficult to understand the jury's verdict. This jury deliberated for several days before reaching a verdict in this case. Even when applying all of the evidence with the standard of proof being that of a preponderance of the evidence, it is understandable both why the jury acquitted Ryan Quashie and that this acquitted conduct should not now be applied toward sentencing. After carefully evaluating the jury's verdict, my objections to the PSR were addressed to the conclusions reached with the use and application of acquitted conduct along with the "Other Criminal Conduct" (PSR, p. 11-13, ¶¶52-63)

      First, in the "Other Criminal Conduct", the PSR refers to Ryan Quashie having committed multiple robberies, most of which occurred prior to July 2009, and going all the way back to 2000, "according to the Government, cooperating witnesses, and trial transcripts." (PSR, p. 4, ¶7). While it certainly is fair for probation to point out that the Court may consider this past criminal conduct in imposing a sentence, this should be balanced with the fact that the jury obviously did not believe either Pacheco's or Ercoli's testimony. If they had, the jury would have certainly reached a different verdict. In order to have acquitted Ryan Quashie of the Purves Street robbery, as well as the firearms offense, they had to completely disregard the

Honorable Brian M. Cogan
January 20, 2017
Page Three

credibility and testimony of both cooperating witnesses. It seems a bit disingenuous to consider this alleged past criminal conduct when the jury apparently disregarded the credibility of the source of such evidence.

Probation also referred to this so-called past criminal conduct by referencing it as a potential basis to depart from the sentencing guidelines, pursuant to §4A1.3 of the USSG. The fact that my client has no criminal history may simply support what the jury obviously concluded and not that it "underrepresents the seriousness of his criminal history and the likelihood that he will commit other crimes." (PSR, p. 21, ¶111). Rather, that neither Pacheco or Ercoli are worthy of belief. Given Ryan Quashie's history, or present status, I seriously doubt that anyone who is at all familiar with him, or this case, would ever fear that he is likely to commit any crimes in the future. [18 U.S.C. §3553(a)(C)].

There is no dispute that this Court has significant discretion in evaluating the evidence at any criminal trial and determining whether or not to apply acquitted conduct. Clearly, acquitted conduct is to be considered with a lower standard of proof being that of a preponderance of the evidence rather than that which the jury was instructed to apply during their deliberations. However, I do believe that probation should have provided the Court with an Offense Level Computation that both included and did not include acquitted conduct with that of the convicted offenses.

If the Purves Street Robbery is not factored into the guidelines calculation then, according to the PSR, the Adjusted Offense Level would be 27. (PSR, p. 10, ¶¶36-41). The PSR applied an Adjustment for Role in the Offense to which I have objected. Impersonating a cable repairman to commit the offense should not be an abuse of position of trust and therefore I objected to the 2 level enhancement. If the 2 levels are not added than the Adjusted Offense Level would be 25. Since Ryan Quashie has never been arrested prior to this offense and has no criminal history points, his Total Offense Level would be 25 with a sentencing range of 57 to 71 months. Even within this calculation there remains an additional 5 level enhancement because it is alleged that firearms were possessed and brandished during this offense. Again, this is contradicted by the jury's not guilty verdict of Mr. Quashie possessing or using a firearm as charged in Count Four.

The application of acquitted conduct to Ryan Quashie's Total Offense Level is obviously very significant. If Your Honor were to apply the acquitted conduct, following the guidelines computation as set forth in the PSR, and sentence Mr. Quashie to within his sentencing range, it would mean the difference of many years incarceration. Even if this Court decided, within its discretion, not to sentence

Honorable Brian M. Cogan
January 20, 2017
Page Four

Mr. Quashie to a guideline sentence, as per 18 U.S.C. §3553(a), the starting point for this Court would significantly be higher before applying §3553(a) and deciding his ultimate sentence.

Both probation and the Government will request this Court to sentence Ryan Quashie based upon all of the charged conduct including those offenses he was ultimately acquitted of by the jury. It would appear that all circuit courts have allowed district courts to consider acquitted conduct as part of the sentencing process. This broad recognition of a sentencing court's authority comes from the holding in *United States v. Watts*, 519 U.S. 148, (1997). Most importantly, the decision in *Watts* leaves it to the discretion of the district court judge to make such a considered decision. While *Watts*, even under Sixth Amendment scrutiny, has created an available option for considering acquitted conduct at sentencing it has often been questioned. *Id.* at 170 (Stevens, J., dissenting) ("The notion that a charge that cannot be sustained by proof beyond a reasonable doubt may give rise to the same punishment as if it had been so proved is repugnant to that jurisprudence."); *Id*, at 170-171 (Kennedy, J., dissenting) (noting the Court's ruling "does raise concerns about undercutting the verdict of acquittal.").

Even before *Booker*, the Court held in *Apprendi v New Jersey*, that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. 466, 490 (2000). Continuing under a Sixth Amendment analysis, in *Blakely v. Washington*, the Court held the strict adherence to sentencing parameters, as set by the jury verdict, is not limited only to sentences exceeding the statutory maximum. 542 U.S. 296, 303-04 (2004). ("The 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."). The Court further found, with reference to the intent of the 'Framers,' "the judge's authority to sentence derives wholly from the jury's verdict." *Id.* at 306. *Booker* built on the *Apprendi-Blakely* foundation by extending to guideline calculations the Sixth Amendment jury verdict limitation at sentencing. In *Alleyne v. United States*, the Court continued an adherence to the Sixth Amendment implication in the context of a judicial finding at sentencing that exposes a defendant to a punishment exceeding the mandatory minimum for the offense. 133 S.Ct. 2151 (2013). Such a finding of fact must "be submitted to the jury and found beyond a reasonable doubt" *Id.* at 2163.

The issue as to whether or not to consider acquitted conduct at sentencing, and the impact that this has on defendants' Sixth Amendment rights, was addressed by Justice Scalia in a 2014 dissent from the denial of a petition for writ of certiorari. His dissent was joined by Justice Thomas and Justice Ginsburg. In *Jones v. United States*, 135 S.Ct. 8, (2014), Justice Scalia noted that, but for the judge's finding of fact, the sentences for the petitioners would have been "substantively unreasonable" and therefore illegal. Any fact that increases the penalty to which a defendant is exposed constitutes an element of a crime, *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and "must be found by a jury, not a judge," *Cunningham v. California*, 549 U.S. 270, 281, (2007); *Rita v. United States*, 551 U.S. 338, 371 (2007).

In the past, district and circuit court judges have provided much thoughtful commentary expressing concern over the issue of whether one's Sixth Amendment guarantees are diminished by the use of acquitted conduct at sentencing. *See Seigelman v. United States*, 136 S.Ct. 798 (2015); *United States v. Settles*, 530 F.3d 920 (D.C. Cir. 2008); *United States v. Baylor*, 97 F.3d (D.C. Cir. 1996); *United States v. Grier*, 475 F.3d 556 (3d Cir. 2007); *United States v. Pimentel*, 367 F. Supp. 2d 143 (D. Mass. 2005); *United States v. Settles*, 530 F.3d 920 (D.C. Cir. 2008); *United States v. Grier*, 475 F.3d 556 (3d Cir. 2007) (J. McKee, dissenting).

In *Siegelman*, the Supreme Court denied a petition for writ of certiorari where this issue was raised once again. This writ was denied even though an amicus brief filed by 116 former State Attorneys General supported the Petitioner. They argued that the Sixth Amendment guarantees were denigrated with the use of acquitted conduct at sentencing. Pursuant to the *Watts* case, a judge is allowed to decline to consider acquitted conduct at sentencing. It is with the implication of the Sixth Amendment guarantees that I am respectfully requesting Your Honor to decline considering acquitted conduct in this case.

As this Court is well aware, the sentencing guidelines are now advisory, post *United States v. Booker*, 125 S. Ct. 738 (2005), and are but one of five factors to be considered in determining a sentence, district courts are nevertheless directed to determine the applicable guidelines range and consider it along with all the factors listed in 18 U.S.C. §3553(a). *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). The Supreme Court's opinion in *Gall v. United States*, 128 S. Ct. 586 (2007), "rejected an appellate rule that requires 'extraordinary' circumstances to justify a sentence outside the Guidelines range" and further "rejected the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence." According to the *Gall* case, the sentencing guidelines provide a sentencing court with

Honorable Brian M. Cogan
January 20, 2017
Page Six

a "starting point and the initial benchmark". The requirement that a court impose a "sufficient, but not greater than necessary" sentence to achieve those goals sets a limit on the sentence that a court may impose. The Court of Appeals cannot overrule a district court's sentence that is based upon the consideration of the §3553(a) factors along with a reasonable and rationale determination in light of the record in the particular case. The Supreme Court in *Kimbrough v. United States*, 552 U.S. 85, 128 S. Ct. 558 (2007), rejected an attempt to give special weight to the sentencing guidelines. These cases clearly state that the district courts are only required to look to the advisory guidelines as they should also look to all the other factors set forth in 18 U.S.C. §3553(a).

There should not be any difference in the approach taken by this Court simply because Ryan Quashie chose to go to trial and testified on his own behalf. Admittedly, what is difficult to comprehend and reconcile, and may have given the jury pause for concern in determining the guilt or innocence of my client, is attempting to fully understand the person who was both a friend with the likes of Pacheco and the person who has spent his entire life working every single day, other than when on physical disability, while also generously offering his home to so many friends and family as a welcoming place. (PSR, pp. 16-18, ¶¶80-90).

One need only to carefully read the many letters enclosed and addressed to Your Honor that have been written on behalf of Ryan Quashie to notice a common theme throughout. They all express how considerate and generous Ryan Quashie has been his entire life with so many people. Whether it has been his simply being there for them at a time in need, or providing helpful guidance and advice, these letters all express the calm and polite individual they have come to know as well as the hard working responsible employee many have worked with over the years.

Most respectfully, I am requesting on behalf of Ryan Quashie, that this Court incorporate all of the many factors as I have heretofore attempted to suggest in evaluating and applying, or not applying, the acquitted conduct coupled with those enumerated in 18 U.S.C. §3553(a). After doing so, I am confident that Your Honor will impose a sentence that is appropriate and fair.

Thank your for your consideration.

Respectfully,

Kenneth A. Paul

KAP:nd

Honorable Brian M. Cogan
January 20, 2017
Page Seven

Cc: AUSA Erik Paulsen
    AUSA Julia Nestor        (Via ECF)

    Ms. Cheryl M. Fiorillo
    Senior U.S. Probation Officer    (Via ECF)

    Mr. Ryan Quashie