| UNITED STATES DISTRICT COURT | | C/M |
|---|---|---|
| EASTERN DISTRICT OF NEW YORK | | |

---------------------------------------------------------- X
UNITED STATES OF AMERICA,

                 - against -

RYAN QUASHIE,

                           Defendant.

---------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

14-cr-0376 (BMC)
18-cv-3740 (BMC)

**COGAN**, District Judge.

      Defendant *pro se* seeks habeas corpus relief under 28 U.S.C. § 2255 from his conviction for Hobbs Act robbery and Hobbs Act conspiracy in violation of 18 U.S.C. § 1951. The Second Circuit affirmed his conviction after a second jury trial, United States v. Ercoli, No. 17-552-cr, 731 F. App'x 38 (2d Cir. April 24, 2018), the jury in his first trial having deadlocked. Defendant's conviction stemmed from two armed robberies he committed between July 2010 and January 2011, each with two or three co-conspirators. The first robbery was of a residential apartment to which defendant and his co-conspirators gained entry by posing as police officers, and the second was of a home to which they gained entry by posing as cable repairmen.

      Defendant raises two related points of error on this habeas corpus motion: (1) newly discovered evidence shows that it is more likely than not that he did not commit the crime; and (2) his counsel was ineffective for not uncovering the newly discovered evidence or similar evidence and for not arguing that this evidence would have shown that defendant was not one of the robbers. Neither of these points have merit and the motion is therefore denied.

## BACKGROUND

The key issue at both trials was identification. The Government's primary witnesses were two cooperators who were serial robbers. They testified that they had planned and executed the two robberies at issue with defendant. However, none of the victims could positively identify defendant at trial as one of the perpetrators, although one of them (the apartment robbery victim) had previously selected defendant's photograph out of a photo array.

The apartment robbery victim generally described two light-skinned Hispanic males, consistent with the cooperating witnesses' appearances, and one taller black male, consistent with defendant's appearance. Both cooperators testified that as they left the apartment, defendant realized that he had inadvertently dropped his cellphone, and that when the three of them tried to return to the apartment to retrieve it, the victim refused to readmit them, so they had no choice but to flee. (The apartment resident had initially admitted them because they were dressed as policemen.) The victim corroborated that one of the robbers had dropped his cellphone. Defendant's cellphone ultimately led police to arrest defendant and the cooperators (whose phone numbers were in defendant's contact list). The cellphone tested positive for defendant's DNA and no one else's.

The location of the second robbery (the home robbery) was actually a mistake. The cooperators and defendant had intended to rob the owner/manager of a bar that the cooperators had frequented, based on their belief that the owner/manager kept a lot of cash at home. However, they followed the wrong manager home from the bar and ended up robbing that other manager's wife and children in their home.

The wife, Mrs. Mikelatos, testified at trial that one of the perpetrators was a 6'2"-6'4" tall, African-American male with dark skin, which generally fit defendant's description; that he

was wearing a hoodie, and a construction hat or helmet (the robbers were posing as cable repairmen); and that she believed he had short braids or dreadlocks. Her description of the other two robbers matched the cooperators.

All the other witness testimony about defendant's hair was inconsistent with Mrs. Mikelatos's. One of the cooperators, who had known defendant for many years, testified that defendant did not have braids or dreadlocks at the time of the robberies, although he had worn braids in the early 2000s. Another witness for the Government, a former girlfriend of defendant's who had dated him during the time of the robberies, testified on cross-examination that defendant never wore braids. Consistent with the first cooperator, defendant testified on his own behalf that he never wore braids and wore dreadlocks no later than the early 2000s.

In addition, the other cooperator testified on cross-examination that there was a third perpetrator involved in the apartment robbery as a lookout named Universal Santiago a/k/a Uni, and that Santiago had braids at the time of the robbery, but that Santiago did not enter the apartment building with the three other robbers. Another Government witness, a former girlfriend of Santiago's who also knew defendant, also testified that she never saw defendant with braids or dreadlocks.

Defense counsel seized on this conflict in the testimony in his closing argument, emphasizing, among other things, that because Mrs. Mikelatos had testified that the black male had braids or dreadlocks, it could not have been defendant. The Government responded that Mrs. Mikelatos was simply mistaken about seeing dreadlocks or braids because of the traumatic nature of the home invasion, and that in fact it was defendant who had perpetrated the robberies.

In addition to the cooperators' testimony and the fact that defendant's cellphone (with only his DNA on it) was found in the apartment where the first robbery happened, the

Government introduced call records of the cellphone showing frequent calls between defendant and the cooperators in the days and hours before the home robbery. These calls matched events that occurred during the planning of the robbery. The Government also showed that the *modus operandi* used for the home robbery was consistent with defendant's regular job as a cable repairman. The Government introduced evidence showing that a close female friend of defendant's worked at a pest control company at the time of the robbery, and that that company's telephone was used to schedule a fake cable repair visit to the home, thus setting up the robbery.

Defendant, in addition to denying involvement in the robberies (although acknowledging a very close relationship with the main cooperator), testified that he had no dreadlocks or braids at the relevant time. He further testified on cross-examination that one of the cooperators frequently used his cellphone and that his cellphone must have ended up in the victim's apartment because that cooperator borrowed it. His former girlfriend also testified that he maintained a modest and indeed thrifty lifestyle, in contrast to the extravagant lifestyle of the cooperators.

**DISCUSSION**

**I.      Actual Innocence**

In support of his motion, defendant offers two affidavits from witnesses who did not testify at trial. The first is from another friend of defendant. She authenticates a photograph of him taken during the summer or fall of 2009 in which he has very short hair and no braids or dreadlocks. She also avers that she has known defendant for 13 years and he has "never grown his hair out" and that she has seen him with a shaved head on several occasions over the years.

The second affidavit is from a licensed hairstylist who owns her own salon. It is a sort of expert affidavit. She avers that it would take approximately two years for someone who is bald or has a shaved head to grow hair of 16-18 inches in length.

To obtain relief based on "newly discovered evidence," a habeas petitioner

> "bears a heavy burden of convincing the court that the newly-discovered evidence would have resulted in an acquittal." Pri-har v. United States, 83 F. Supp. 2d 393, 399 (S.D.N.Y. 2000). "Such motions 'based upon previously-undiscovered evidence [are] ordinarily not favored and should be granted only with great caution.'" Id. (quoting United States v. Stofsky, 527 F.2d 237, 243 (2d Cir. 1975)). Finally, to argue that this evidence demonstrates his actual innocence, "petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Bousley v. United States, 523 U.S. 614, 623 (1998).

Brown v. United States, 10-cv-2380, 05-cv-857, 2011 WL 3273202 at *6 (S.D.N.Y. Aug. 1, 2011) (alteration in original). And "new evidence in § 2255 proceedings . . . is evidence that is discovered after the original hearing, and which could not, with due diligence of counsel, have been discovered sooner." Giacalone v. United States, 739 F.2d 40, 43 (2d Cir. 1984) (internal quotation marks omitted); accord United States v. Siddiqi, 959 F.2d 1167, 1173 (2d Cir. 1992) (applying Federal Rule of Criminal Procedure 33).

The purported new evidence meets none of the requirements for habeas corpus relief. First, it does not meet the requirements for "newly discovered evidence." Defendant offers no reason why he could not have obtained the testimony of his friend of 13 years before his first trial, let alone his second. His first trial occurred in February and March 2016; his second trial occurred in July 2016. The photograph that his affiant authenticates is from 2009 and the affiant's professed knowledge of his appearance during that period was something she obviously possessed before both of his trials. There is nothing new about it except that defendant is raising it now.

5

Second, and more importantly, the purported newly discovered evidence has no probative value. One could say that the evidence is merely cumulative, because it duplicates the trial testimony of defendant's former girlfriend and Santiago's former girlfriend, as well as the testimony of the cooperators and defendant himself, but the lack of probative value goes beyond that – defendant's newly discovered evidence simply does not address any fact that the Government disputed at trial. The Government never contended that defendant had braids or dreadlocks at the time of the robbery. To the contrary, the Government expressly argued that its witness, Mrs. Mikelatos, was mistaken when she testified that the black male assailant had dreadlocks or braids.[1]

If the jury had accepted that portion of Mrs. Mikelatos's argument that the black male had braids or dreadlocks, then it could not have convicted defendant. But the jury did not need to: it could have accepted the testimony of every other witness besides Mrs. Mikelatos about defendant's hair and also accepted the Government's argument that Mrs. Mikelatos was simply mistaken about her assailant's hair. Thus, for defendant to offer proof in this motion that he had a short hairstyle simply acknowledges a fact the Government did not dispute at trial. For the same reason, defendant's expert affidavit about how long it takes hair to grow adds nothing.

Defendant was convicted not because of the length of his hair (or more precisely, the lack thereof), but because of the extensive cellphone, DNA, photo-array identification, and testimonial evidence showing that he was the third robber.

---

[1] Because I am assuming the truth of the affidavits that defendant has submitted, there is no need for an evidentiary hearing on this motion. See Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (petition under § 2254); Raysor v. United States, 647 F.3d 491, 494 (2d Cir. 2011) (motion under § 2255).

## II. Ineffective Assistance

Defendant's related argument of ineffective assistance has two parts: (1) his counsel was ineffective for failing to present witnesses and more evidence that would have shown that he did not have braids or dreadlocks at the time of the robberies; and (2) his counsel was ineffective for not offering an alternative theory of the robber's identity. I have effectively disposed of the first part by holding that to convict, the jury must have found that Mrs. Mikelatos was wrong and that in fact, the person who robbed her did not have braids. I will therefore address only petitioner's second argument.

The onerous standard for proving ineffective assistance of counsel is hornbook law. A defendant claiming ineffective assistance of counsel must prove two things. First, defendant must prove that counsel's representation "fell below an objective standard of reasonableness" according to "prevailing professional norms." Strickland v. Washington, 466 U.S. 668, 688 (1984). Second, defendant must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; see also Hill v. Lockhart, 474 U.S. 52, 58-60 (1985). In other words, defendant "must show that the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687. Trial counsel's decisions about which arguments to stress, which witnesses to call, which motions to make and which lines of inquiry to pursue "fall squarely within the ambit of trial strategy and, if reasonably made, cannot support an ineffective assistance claim." United States v. Smith, 198 F.3d 377, 386 (2d Cir. 1999).

Defendant's argument that his attorney should have and failed to identify an alternative perpetrator is factually incorrect. Having stressed to the jury the inconsistency between

defendant's actual hairstyle and Mrs. Mikelatos's testimony, defendant's attorney did in fact offer an alternative – that the robber was Santiago:

> [Mrs. Mikelatos said that] she as [*sic*] able to see braids, dreadlocks, not just below the hat, but, in fact, she told us down to the shoulders. That was her testimony. Ryan Quashie has never had braids. He's never had dreadlocks. *There's only one photo I've seen in this trial that anybody had dreadlocks. I don't know if it was Uni [Santiago]*. I don't know if he was there at Mermaids [the bar]. Because I wasn't there, and you weren't there. But we know one thing: Ryan Quashie wasn't that person who was walked around that house and [was] shown four cable boxes by Ms. Mikelatos . . . . She had a very good opportunity to have seen him, this person, this male black, and she certainly had an opportunity to see that person's hair because she is . . . escorting him around in her apartment for several minutes.

(Emphasis added).

The only daylight I can see between his attorney's suggestion to the jury that the actual robber was Santiago and defendant's argument here is that defendant is arguing here that his attorney should have more positively asserted that the robber was Santiago, instead of merely identifying the possibility. But that would have been an unsound trial strategy.

Defense counsel was clearly using Ms. Mikelatos's recollection of the robber's dreadlocks and the fact that Santiago wore dreadlocks to support his argument of reasonable doubt that defendant was the third robber. To more affirmatively state that Santiago was in fact the third robber would have taken on a burden that defendant did not have. Defense counsel clearly appreciated that if the jury had to make a choice as to whether the third robber was defendant or Santiago, the great weight of the evidence – everything other than the alleged braids or dreadlocks – pointed to defendant. This was particularly true for the second robbery in which Ms. Mikelatos was the victim – unlike the first robbery, for which Santiago was the lookout, there was no testimony or other evidence connecting Santiago to the second robbery. Instead of

forcing the jury into that choice, defense counsel emphasized a fact that could cause the jury to have doubt about defendant's guilt. That was well within counsel's trial-strategy discretion.

Defendant's ineffective assistance claim fails to meet either prong for relief under Strickland.

## CONCLUSION

Defendant's motion for a writ of habeas corpus [221] is denied. As petitioner has not made a "substantial showing of the denial of a constitutional right," a certificate of appealability will not issue. See 28 U.S.C. § 2253(c)(2). The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

                                                                                            U.S.D.J.

Dated: Brooklyn, New York
       October 19, 2018